IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HABITAT FOR HUMANITY OF SAN ANTONIO, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. SA-08-CA-0013-OG |
| HABITAT FOR HUMANITY INTERNATIONAL, INC., | § § § | |
| Defendant. | § § | |

## NOTICE OF STIPULATED DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41(a)(1), Plaintiff and Counter-Defendant Habitat for Humanity of San Antonio, Inc. ("HFHSA"), together with Defendant and Counter-Plaintiff Habitat for Humanity International, Inc. ("HFHI"), hereby stipulate to the voluntary dismissal, with prejudice, of all claims and counter-claims pending in this litigation between HFHSA and HFHI.

On May 12, 2008, the parties reached an agreement concerning all claims and counter-claims pending in this litigation between HFHSA and HFHI. A copy of the Settlement Agreement is attached hereto as Exhibit "A" and is filed simultaneously with this Notice. In accordance with the terms of the Settlement Agreement, HFHSA and HFHI hereby agree and stipulate to the dismissal, with prejudice, of all claims brought by HFHSA against HFHI, and all counter-claims brought by HFHI against HFHSA. Each party shall bear its own attorneys' fees and costs.

Dated: July 3, 2008                                AKIN GUMP STRAUSS HAUER & FELD LLP


_R. Laurence Macon_
_____

R. LAURENCE MACON
State Bar No. 12787500
lmacon@akingump.com
300 Convent Street, Suite 1600
San Antonio, Texas 78205
(210) 281-7000 (telephone)
(210) 281-2035 (facsimile)


CHARLES W. HANOR
Texas Bar No. 08928800
chanor@hanor.com
REBECCA K. LIVELY
Texas Bar No. 24052025
rlively@hanor.com
HANOR, LIVELY, CERNYAR & SABA
CHARLES W. HANOR, P.C.
750 Rittiman Road
San Antonio, Texas  78209
(210) 829-2002 (telephone)
(210) 829-2001 (facsimile)

– and –

J. DANIEL HARKINS
Texas Bar No. 09008990
dharkins@coxsmith.com
MATTHEW M. JENNINGS
Texas Bar No. 24050820
mjennings@coxsmith.com
COX SMITH MATTHEWS, INC.
112 East Pecan Street, Suite 1800
San Antonio, Texas  78205
(210) 554-5500 (telephone)
(210) 226-8395 (facsimile)


ATTORNEYS FOR PLAINTIFF

**YETTER & WARDEN, LLP**


/s/ R. Paul Yetter (R. Laurence Macon with
permission)

R. PAUL YETTER
State Bar No. 22154200
pyetter@yetterwarden.com
GEORGE H. FIBBE
State Bar No. 24036559
gfibbe@yetterwarden.com
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000 (telephone)
(713) 632-8002 (facsimile)


RUDY A. GARZA
Texas Bar No. 07738200
rugar@sbcglobal.net
GARZA & LAZOR, P.C.
300 Convent Street, Suite 2400
San Antonio, Texas  78205
(210) 225-2400 (telephone)
(210) 225-7402 (facsimile)

– and –

JERRE B. SWANN
JSwann@KilpatrickStockton.com
JUDITH A. POWELL
JPowell@KilpatrickStockton.com
ALEX FONOROFF
AFonoroff@KilpatrickStockton.com
CHARLES HOOKER
CHooker@KilpatrickStockton.com
KILPATRICK STOCKTON, L.L.P.
1100 Peachtree Street
Atlanta, Georgia 30309-4530
(404) 815-6500 (telephone)
(404) 541-3347 (facsimile)


ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(b)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by e-mail, facsimile transmission and/or first class mail on this the 3rd day of July, 2008.

**R. LAURENCE MACON**

4

# EXHIBIT "A"

# TO NOTICE OF STIPULATED DISMISSAL

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into by and among Habitat for Humanity International, Inc. ("Habitat" or "HFHI"), a Georgia nonprofit organization with its principal place of business at 121 Habitat Street, Americus, Georgia 31709, and Habitat for Humanity of San Antonio, Inc. ("HFHSA"), a Texas nonprofit organization with its principal place of business at 311 Probandt, San Antonio, Texas 78204, to be effective the 12th day of May, 2008 ("Effective Date").

Whereas, HFHSA filed Civil Action No. SA-08-CA-0013-OG, entitled *Habitat for Humanity of San Antonio, Inc. v. Habitat for Humanity Int'l, Inc.,* on January 4, 2008, in the United States District Court for the Western District of Texas, San Antonio Division ("Action"); and

Whereas, Habitat responded to the claims and filed certain counterclaims against HFHSA in the Action, on February 8, 2008; and

Whereas, the claims and counterclaims reflect disputes and controversy between HFHSA and Habitat ("Parties") with respect to, among other issues, continued use by HFHSA of the Habitat for Humanity name and related service marks, trade names, logos, and the like as set forth in Exhibit A to Schedule C of the U.S. Affiliation Agreement, ("HABITAT Marks"), as well as HFHSA's willingness to commit to the new Habitat U.S. Affiliation Agreement; and

Whereas, the Parties wish to resolve and settle all disputes between them with respect to the Action and the facts underlying it; and

Whereas, HFHSA wishes to remain an affiliate of Habitat and to sign the U.S. Affiliation Agreement, with certain clarifications and limited modifications as provided in this Settlement Agreement, and in all other respects the U.S. Affiliation Agreement will be in full force and effect as to HFHSA;

Now, therefore, in consideration of the mutual promises and covenants below, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, subject to the certification and execution of the U.S. Affiliation Agreement as set forth in Paragraph 2 below, the Parties agree as follows:

1.    Habitat owns all rights, title, and interest in and to the HABITAT Marks in the United States and elsewhere. HFHSA will not dispute or do anything to impair Habitat's rights in or sole ownership and exclusive right to use and control the use of its HABITAT Marks. All use of the HABITAT Marks by HFHSA will inure to the benefit of and be on behalf of Habitat. HFHSA has no any right, title, or interest in the HABITAT Marks other than to use the

Initials _____

Initials _____

HABITAT Marks solely in accordance with the terms of the U.S. Affiliation Agreement and this Settlement Agreement.

2.      HFHSA will perform a self-evaluation of its operations within 40 days of the Effective Date in accordance with the QA Checklist of the U.S. Affiliation Agreement. Habitat will review HFHSA's self-evaluation, and if HFHSA's operations as represented are in acceptable compliance with the requirements of the U.S. Affiliation Agreement, Habitat will certify in writing that HFHSA is in acceptable compliance with the requirements of the U.S. Affiliation Agreement. Upon this certification, HFHSA will execute the U.S. Affiliation Agreement.

3.      So long as HFHSA's operations remain at the same certified level of compliance with the U.S. Affiliation Agreement (as monitored through the standard QA Checklist procedure), HFHSA will be exempt from additional compliance requirements instituted under the U.S. Affiliation Agreement for three (3) years after the Effective Date (the "Initial Term"). Likewise, the other clarifications and modifications provided in this Settlement Agreement relating to the U.S. Affiliation Agreement, except for the provision set forth in Paragraph 9 below, will be in effect for the Initial Term.

4.      For purposes of clarity but not modification of the preceding paragraph, HFHSA understands that during the Initial term from time-to-time HFHI may seek to amend the Handbook, the Core Tenants and other documents and policies associated with or referenced in the Agreement. HFHSA will carefully consider the implementation of any new policies, changes in payments of tithes or fees to HFHI or any other proposed amendments with an open mind, taking into consideration HFHSA's objectives and any competing requirements that may be imposed on HFHSA by its donors and stakeholders; provided however, if HFHSA determines that it is not in its best interest to be bound by such new policies, tithes, fees or other amendments, HFHSA's decision shall not be grounds for a determination that HFHSA is in a state of non-compliance or uncertainty, nor shall it be grounds for probation, suspension, termination, or diminishment in any way of HFHSA's affiliation with HFHI during the Initial Term. For the purposes of further clarity but not modification of the preceding sentence, HFHSA will not be bound by any change in the Habitat tithe requirement during the Initial Term

5.      The Affiliate Restructuring provisions of the U.S. Affiliation Agreement (G.33) will apply to HFHSA as follows during the Initial Term and the Transition Period: (a)   HFHSA will control all of its internal restructurings that do not involve third parties, such as internal organizational changes; (b) Habitat must review and approve any HFHSA plans for external reorganization or restructuring, such as involving third parties or inter-affiliate mergers, and Habitat will not withhold its consent unreasonably. By way of example, Habitat will not approve of an HFHSA reorganization that: (i) goes beyond the boundaries of its service area (without the consent of the relevant adjacent affiliate(s)); (ii) impacts its tax-exempt status; (iii) reflects negatively on Habitat or otherwise negatively impacts the reputation or goodwill of Habitat; (iv) intentionally violates a Core Tenet; (v) is detrimental or contrary to the Habitat mission; or (vi) otherwise causes irreparable harm to Habitat.

-2-

Initials
Initials

6.     As to any disputes arising under or relating to the Settlement Agreement or any of its provisions, or as to the content or drafting of a final order or Judgment, the parties mutually agree to submit said disputes to Joe Casseb, who shall act as MEDIATOR / ARBITRATOR to resolve the dispute according to the following terms: STEP ONE: The parties agree to attempt to resolve any disputes regarding the interpretation of the content of the agreement or the fulfillment of its terms first by phone conference with the Mediator   who facilitated this settlement. STEP TWO:   If the parties cannot resolve their differences by phone conference, then each agrees to schedule with the Arbitrator, one-half day of ARBITRATION within thirty (30) days, to resolve the disputes at a neutral location selected by the Arbitrator.  By consenting to have Joe Casseb serve as Arbitrator, each party agrees to waive any claim of conflict of interest or other grounds for objection or disqualification of the Arbitrator or Arbitrator's award under Section 171.088 Tex. Civ. Prac & Rem Code.  If arbitrated, the Arbitrator's decision will be final and binding upon all parties.

7.     During the Initial Term, HFHSA may use its current name and logo except in connection with national Habitat projects or events in Bexar County, in which case the HFHI logo will be used exclusively.

8.     All books and records of HFHSA and their contents are its sole property.  Habitat will maintain the confidentiality of the information in those HFHSA books and records and not use or disclose the information to third parties without the written consent of HFHSA, except to the extent that Habitat acquired the information from another source.

9.     Upon termination of the U.S. Affiliation Agreement, HFHSA's transition from its Habitat affiliation to its non-affiliate status will be governed by the following terms:

(a)  Habitat will provide HFHSA with a non-transferable, fully paid-up license to use the HABITAT Marks in Bexar County, Texas for 18 months unless earlier terminated by HFHSA ("Transition Period").  This license will be exclusive to Bexar County, except that Habitat may continue its current use of the HABITAT Marks in Bexar County, such as for direct mail and national programs.  After the Transition Period, HFHSA will cease all use of the HABITAT Marks.

(b)  During the Transition Period, Habitat will not establish another affiliate in Bexar County.

(c)  HFHSA must provide notice to Habitat of any proposed new name and mark that HFHSA intends to use for any similar operations in Bexar County or elsewhere.  Habitat shall have thirty (30) days after receiving the notice to notify HFHSA of its consent or non-consent to the use and registration of any proposed name or mark, such consent not to be unreasonably withheld.  Any HFHSA name and mark may not be confusingly similar to any HABITAT Marks.

(d)  Upon termination for any reason listed in Article III of the U.S. Affiliation Agreement,  (i) Habitat will not accelerate or otherwise require immediate repayment by HFHSA of outstanding Habitat loans and grants except that Habitat

-3-

Initials _____

Initials _____

may require a reasonable repayment term of any Habitat loans; and (ii) HFHSA will not accelerate out of the ordinary course, or otherwise in a manner inconsistent with donor intent, its acquisition of Gift-In-Kind items or other products available from Habitat's corporate partners.

(e) HFHSA will retain all right, title, and interest in its property and assets, including real estate, leases, houses under construction, inventory, mortgages, trade secrets, intellectual property developed by HFHSA, and donor lists, so long as HFHSA fulfills its fiduciary and statutory duties, including by (i) continuing to provide mortgage servicing for all homeowners, or identifying and transferring such services to an appropriate third party for handling; and (ii) taking adequate care to protect employees, donors, creditors, volunteers, and home recipients.

(f) The terms and provisions of this Paragraph 9 shall survive the termination of the U.S. Affiliation Agreement.

10.    The Parties release and forever discharge each other from any and all causes of action, claims, demands, expenses, damages, liabilities, or losses of whatever kind or nature, known or unknown, arising out of or relating to the facts underlying the Action.

11.    Upon certification of compliance and execution of the U.S. Affiliation Agreement, pursuant to paragraph 2 above, the Parties will file a joint motion to dismiss the Action with prejudice.  The Parties will be responsible for their own respective attorney fees incurred in the Action.

12.    Neither Party will issue a press release or make any public statement regarding the Action, this Settlement, or the other Party without the consent of the other Party.  The Parties will cooperate to draft a joint press release to announce the settlement of their current disputes. Neither Party will publicly disparage the other Party during the duration of the Parties' affiliation and any Transition Period.

13.    The Settlement Agreement cannot be amended or revised except in a writing signed by all Parties.  It contains the entire agreement of the Parties regarding settlement of their dispute and supersedes any prior oral or written agreements, statements, representations, or understandings by or between the Parties, and each disclaims reliance on any such matters.

14.    The Settlement Agreement will be interpreted in accordance with and governed in all respects by the laws of the State of Texas, without regard to conflict of laws principles.

15.    Each Party has cooperated in drafting and preparing the Settlement Agreement, and it shall be construed according to the plain meaning of its language and not for or against either Party.

16.    Each Party is entering into the Settlement Agreement voluntarily; it is under no legal impediment to the entry into and confirmation of this Settlement Agreement; and its representative signing below has full and lawful authority to bind the Party subject to board

-4-

Initials _____

Initials _____

approval.

HABITAT FOR HUMANITY
INTERNATIONAL, INC.

By: _Elizac k Blake_
   Its Authorized Representative
     5-20-08

HABITAT FOR HUMANITY OF SAN
ANTONIO, INC.

By: _____
   Its Authorized Representative
     on  5-13-08